**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BECKLEY DIVISION**

THURMAN DEE PAYNE,

          Petitioner,

v.                                CIVIL ACTION NO. 5:08-cv-00989

TODD R. CRAIG,

          Respondent.

**MEMORANDUM OPINION AND ORDER**
**ADOPTING PROPOSED FINDINGS AND RECOMMENDATION**

The Court has reviewed Petitioner's *Application Under 28 U.S.C. § 2241 for Writ of Habeas Corpus By a Person in State or Federal Custody* (Document No. 3), wherein Petitioner challenges the loss of good conduct time ("GCT") after a Disciplinary Hearing Officer ("DHO") determined that he violated Bureau of Prison ("BOP") Code 201 for fighting with another person. By Standing Order entered on August 13, 2008, this action was referred to United States Magistrate Judge R. Clarke VanDervort for total pretrial management and submission of proposed findings of fact and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B). (Document No. 4.) In his *Proposed Findings of Fact and Recommendation* ("PF&R") (Document No. 6), the Magistrate Judge recommends that the Court find that Petitioner's due process rights were not violated, deny Petitioner's motion to proceed without prepayment and dismiss Petitioner's Section 2241 petition. Petitioner has timely submitted his Objections to the PF&R (Document No. 7). For the reasons that follow, the Court finds Petitioner's asserted objections are without merit and adopts the PF&R.

*I.*

On August 13, 2008, Petitioner, Thurman Dee Payne, while a federal inmate housed at the Federal Correctional Institution in Beaver, West Virginia ("FCI Beckley") filed the instant Writ of Habeas Corpus Petition in which he asserts that his due process rights were violated during a disciplinary hearing conducted at the United States Medical Center for Federal Prisoners in Springfield, Missouri.[1] The record reveals that on February 26, 2008, Petitioner was "threaten[ed] and viciously attacked" by Glendon Henry, another inmate. Both inmates sustained injuries as a result of the altercation. Lieutenant L. Norris overheard each inmate inform medical personnel that the other started the fight. Based on the injuries suffered and the statements made by the inmates, Lieutenant L. Norris charged both men with fighting. Petitioner was informed of the charge and his procedural rights. He provided a statement to the Unit Disciplinary Committee ("UDC") that he was not the aggressor in the dispute, but that he was defending himself. The UDC referred the charge to the DHO and recommended a sanction of thirty (30) days in disciplinary segregation and the loss of twenty-one (21) days of GCT. On February 28, 2008, Petitioner was advised of his rights before the DHO. He indicated that he wanted two inmates, Eric Moses and Jamie Valdez, to testify that it was Henry who "kept running back and forth getting mops and breaking them" during the altercation. (Document No. 3 at 13.) He also wanted Officer Nancy Daniels to testify that Henry "blew passed her and threw hot water on [him]." (*Id*.) Petitioner requested and was appointed a staff representative to represent him during the hearing.

---

[1] Since the filing of the instant petition, Petitioner has been transferred to the Federal Correctional Institution in Florence, Arizona. In his PF&R, the assigned Magistrate Judge finds that jurisdiction remains proper in this district, notwithstanding Petitioner's transfer, because the Fourth Circuit determines jurisdiction in Section 2241 actions "at the time an action is filed." PF&R at 1, n.1 (citing *United States v. Edwards*, 27 F.3d 564 (4th Cir. 1994)). Petitioner did not object to this finding.

On March 11, 2008, Petitioner and his representative appeared before the DHO. At the hearing, Petitioner maintained his assertion that he was defending himself by stating, "I did deliver some strikes to defend myself, but I wasn't the aggressor."[2] (Document No. 3 at 14). The UDC obtained written statements from both inmates, Moses and Valdez. Inmate Valdez indicated that he did not have any knowledge of the incident. However, Inmate Moses stated that Henry "instigated the altercation" by repeatedly "verbally accost[ing]" Petitioner and making threatening gestures towards him. (*Id*. at 16.) He further stated that Petitioner made no attempt to escalate the situation, but only defended himself when attacked and that Henry repeatedly "went to find additional weapons and returned to continue the violence." (*Id*.) According to Inmate Moses, Petitioner remained calm and did nothing to incite Henry each time Henry left the immediate area to obtain weapons. (*Id*.) The DHO reviewed the February 27, 2008, memorandum from Officer Daniels indicating that "she observed a mop handle broken into two pieces on the floor near inmate Payne's bed, several small blood speckles on the floor and on inmate Payne's locker. . . [and] Inmate Payne's shirt was wet and his left hand was bleeding." (*Id*. at 17.) The DHO also considered Officer Durham's statement that on February 26, 2008, he noticed a trash can was knocked over, debris littered the floor and Henry stood by a microwave with blood on his shirt. (*Id*.) Upon consideration of an account of the injuries sustained by each man and the statements made by Lieutenant Norris, Officer Durham, Petitioner, and his witnesses, the DHO found Petitioner guilty of the violation. The DHO explained that "[a]lthough [Petitioner] contends he acted only in self defense, the physical evidence reflects that he was a willing participant in the altercation.

---

[2] The DHO also considered Petitioner's statement to the investigating lieutenant that someone yelled out "child molester" when Henry was coming back from the shower. Shortly thereafter there was an exchange of words and the altercation began.

3

Specifically, his wounds were consistent with being in a fight and the other inmate's wounds were consistent with being struck in the head with a weapon." (*Id*. at 18.) Petitioner was sanctioned with the loss of telephone privileges for one hundred eighty (180) days, loss of twenty-seven (27) days of GCT, and thirty (30) days in disciplinary segregation.

Petitioner exhausted his administrative remedies to appeal the DHO's decision, to no avail. Thereafter, he initiated the instant civil action alleging that the Bureau of Prisons ("BOP") violated his due process rights. In sum, Petitioner alleges, in his Section 2241 petition, that he did not receive a fair and impartial prison disciplinary hearing because the warden improperly appointed "his employee, case manager Jon Roberts, as an alternative DHO" to conduct the hearing. He claims that, as a result, he was illegally sanctioned and transferred in retaliation for his previous filing of a civil suit against the warden. He also contends that he received ineffective assistance from his Staff Representative. He asserts his representative failed to present a meaningful defense and assist with obtaining documentary evidence. Finally, he asserts that the staff representative refused to conduct interviews of witnesses or request an extension of time to do so. (Document No. 3 at 30.)

Upon consideration of these matters, the Magistrate Judge issued his PF&R to which Plaintiff now objects.

*II*.

In his PF&R, Magistrate Judge VanDervort ultimately found that the record does not present any error of constitutional magnitude in the disciplinary proceedings. The Magistrate Judge found that Petitioner received all documents pertinent to the charge against him, was advised of his rights and had ample opportunity to present a defense to the charged violation. With respect to Petitioner's contention that he was denied a fair and impartial hearing due to the Warden's appointment of a

4

Case Manager as the DHO, the Magistrate Judge found that Petitioner's assertion of the lack of impartiality was speculative and insufficient to establish a due process violation. Additionally, he found that Petitioner did not allege that the DHO (1) was not properly trained or certified, as required by 28 C.F.R. § 541.16(a)[3] or (2) someone prohibited from conducting the hearing because he was the "reporting officer, investigating officer or UDC member, or a witness to the incident or [someone who] play[ed] a significant part in having the charge referred to the DHO." 28 C.F.R. § 541.16(b).[4] Additionally, the Magistrate Judge determined that even if the case manager was appointed without the approval of the regional director, as Petitioner alleges, the failure of the prison officials to follow their own internal policy alone was insufficient to establish a due process violation. The Magistrate Judge considered the DHO's decision and determined that there was no indication that the DHO was unfair or impartial as his findings were supported by "some evidence" that Petitioner was involved in a fight. With respect to Petitioner's assertion that he was denied effective representation at the hearing, the Magistrate Judge found that Petitioner was not entitled to be represented by counsel, like defendants in criminal proceedings, and that he has no Sixth Amendment right to an attorney.

In his objections, Petitioner largely reasserts the contentions made in his petition. He states that his "main contention" is that "the record contains no evidence establishing that the [DHO] was, on the date of the hearing, duly trained and certified as a [DHO] or met the other requirements to serve as such." (Petitioner's Motion in Opposition of Magistrate Recommendation ("Obj.")

---

[3] Section 541.16(a) provides in relevant part that "[e]ach Bureau of Prison institution shall have an independent hearing officer (DHO) assigned to conduct administrative fact-finding hearings covering alleged acts of misconduct and violations of prohibited acts . . . . This person must be trained and certified as a DHO, and meet the other requirements for DHO." 28 C.F. R. § 541.16(a). The Court notes that this regulation is no longer effective. (*See* 28 C.F.R. § 541.8.)

[4] Section 541.16(b) can now be found at 28 C.F.R.§ 541.8(b).

5

(Document No. 7) at 2.) He argues that during his incarceration at the prison, all disciplinary hearings were held via monitor by the Regional Disciplinary Hearing Officer, with the exception of his hearing. He contends that the DHO was in his physical presence during the hearing and that he reserved his argument of the denial of a fair and impartial hearing. He contends that "[i]n the event the Petitioner was compelled to see a different hearing officer, . . . the alternate DHO must be a Regional Discipline Hearing Administrator, a DHO from another institution, or a captain from another institution who has passed a DHO certification test." (*Id*. at 3). Finally, with respect to his second contention, he asserts that his staff representative only conferred with him five minutes prior to the hearing and had no valid explanation as to why he failed to conduct interviews with his requested witnesses. He generally alluded to a due process right to have a staff representative in cases to determine the literacy of the inmate or in cases involving complex factual issues. (*Id*. at 4.)

*III*.

This Court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). However, the Court is not required to review, under a *de novo* or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the findings or recommendation to which no objections are addressed. *Thomas v. Arn*, 474 U.S. 140, 150 (1985). In addition, this Court need not conduct a *de novo* review when a party "makes general and conclusory objections that do not direct the Court to a specific error in the magistrate's proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir.1982). When reviewing portions of the PF&R de novo, the Court will consider the fact that Petitioner is acting pro se, and his

6

pleadings will be accorded liberal construction. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir.1978).

*IV.*

Federal prisoners must be afforded due process before they can be deprived of their good conduct time, in which there is a liberty interest. However, inmates do not enjoy "the full panoply of due process rights due a defendant in . . . [criminal] proceedings." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). In *Wolff*, the Supreme Court considered how prison disciplinary hearings must be structured to comport with the demands of due process and set forth what procedure is required at a minimum. In the context of a prison disciplinary hearing, due process requires that the inmate receive (1) advance written notice of the claimed violation at least twenty-four (24) hours before the hearing; (2) an opportunity to call witnesses and present documentary evidence in his defense when doing so will not be unduly hazardous to institutional safety or correctional goals; (3) a written statement by the factfinder as to the evidence relied upon and the reasons for the disciplinary action taken and (4) an impartial factfinder. *Wolff*, 418 U.S. 563-69. Further, to satisfy the requirements of due process, a disciplinary decision must also be supported by "some evidence" to revoke good conduct time. *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 455 (1985). There, the Supreme Court stated:

> This standard is met if there was some evidence from which the conclusion of the administrative tribunal could be deduced . . . . Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board.

(*Id*. at 455-56) (internal quotation and citations omitted).

7

Against this backdrop, the Court has reviewed Petitioner's pleading, attached exhibits and objections. The Court agrees with the analysis contained in the PF&R which is not meritoriously challenged by Petitioner. Contrary to Petitioner's assertion that the hearing was affected by the "command influence" of the warden, Petitioner has not established that the DHO was, in any way, biased. Moreover, he has set forth no allegations which indicate that his disciplinary hearing warranted the appointment of an alternative DHO as he contends. Section 541.16(a) provides only for an alternative DHO, "in the event of a serious disturbance or other emergency, or if an inmate commits an offense in the presence of the DHO[.]" The facts in this record do not appear to fall within the parameters of this regulation. However, even if the Case Manager was an alternate DHO, Petitioner fails to demonstrate that his appointment was improper. Further, the Court finds Petitioner's allegation, that the DHO was in his physical presence during the hearing, is insufficient to establish a due process violation. There is no allegation or facts in the record which indicate that the DHO was in his presence during the February 2008 incident. Just as Magistrate Judge VanDervort found, this Court concludes that the record in this case does not establish that the DHO's consideration of Petitioner's conduct was in any way biased or prejudicial. Petitioner was found guilty of Violation Code 201 in part due to his own admission that he struck Henry. In sum, Petitioner's assertion that he acted in self-defense was considered, but rejected by the DHO. This rejection does not lead to a finding that the DHO was biased. On the evidence presented at the hearing, it is reasonable that the DHO could have considered that Petitioner had an opportunity to avoid the fight or seek prison personnel during any of the times Henry walked away from their skirmish. Therefore, the Court is not persuaded that Petitioner's hearing was conducted by a biased DHO.

Finally, with respect to Petitioner's contention that his staff representative was ineffective, the Court finds that Petitioner's due process rights were not violated by the quality of his representation since he does not have a constitutional right to assistance of counsel during the disciplinary processes. As Petitioner contends in his objections, due process requires a representative in cases involving an illiterate inmate or the complex issues. These instances are not applicable to this case. Moreover, the witnesses that Petitioner requested to testify on his behalf provided written statements which were considered by the DHO. Petitioner indicated that he had no further questions for these witnesses (Document No. 3 at 17.) Petitioner and his representative both availed themselves of the opportunity to provide oral statements during the hearing. Upon consideration of the record in this case, the Court finds Petitioner's contention that his due process rights were violated by the quality of his representation to be unavailing.

This Court agrees with the findings of the Magistrate Judge in that Petitioner received the minimum due process safeguards set forth in *Wolff*. He received documents pertinent to the charges against him, was advised of his rights, and had ample opportunity to present a defense to his charges. A review of the record before the Court reveals that the DHO's decision was supported by "some evidence" and, on these facts, this Court will not substitute its judgment for that of prison administrators.

*V.*

Based on the foregoing findings, the Court does hereby **ORDER** that the Magistrate's Proposed Findings and Recommendation (Document No. 6) be **ADOPTED.** The Court **ORDERS** that Petitioner's *Application Under 28 U.S.C. § 2241 for Writ of Habeas Corpus By a Person in State or Federal Custody* (Document No. 3), be **DISMISSED WITH PREJUDICE** and **DIRECTS**

the Clerk to **REMOVE** this matter from the Court's docket.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: September 9, 2011

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA